<div style="margin-left: margin">Culver
v.
Barnet.</div>

cutting and removing of certain trees and timber; and the gist of the action, as stated in the first count, is the obstruction in removing them. This surely cannot apply to either of the counts. The paper cannot be read to the Jury.

*Titus Hutchinson*, for plaintiff.
*Charles Marsh*, for defendant.

PRESENT,

*ENOCH WOODBRIDGE*, Chief Judge.
*LOTT HALL*, } *Assistant Judges.*
*NOAH SMITH*, }

DANIEL DEWEY,
Assignee of the Sheriff of Windsor County,
*against*
JACOB BRADBURY.

<div style="margin-left: margin">If a bond be executed jointly and severally by three, and an alteration is made in it by the consent of two of the obligors in the absence of the third, and afterwards the seal and signature of the third be erased by the obligee or his agent, without the consent of the others, the bond is void.</div>

THE plaintiff declared in debt upon a gaol bond, jointly and severally made and executed by defendant and one *Solomon Strong*, since deceased, to the sheriff of *Windsor* County, and by him assigned to the plaintiff; conditioned, in the usual form, that *Jacob Bradbury*, a prisoner for debt, should not depart the liberties of the prison; dated 1st *July*, 1800.

Plea, *non est factum*. Issue joined and put to the Jury.

And now the plaintiff offered a bond in evidence, the penal part of which recited, that *Solomon Strong*,

*Jedediah Strong*, and *Jacob Bradbury*, held themselves firmly bound and obliged, &c.

The execution of the bond by these three obligors was proved by *Daniel Short*, one of the subscribing witnesses. The signature and seal of *Jedediah Strong* did not appear on the bond.

*Charles Marsh*, for defendant, objected, that the bond offered in evidence, and proved by *Daniel Short*, is not the same bond declared upon.

*Nathaniel Chipman*, for the plaintiff, now stated, that the bond was originally made by *Solomon Strong*, *Jedediah Strong*, and *Jacob Bradbury*, but soon after the execution of it an immaterial defect was discovered in the bond, *scilicet*, *Jacob Bradbury* was set forth as being commorant in *Hartford*. This defect was rectified by erasing *Hartford*, and inserting *Hartland*. This was effected in the absence of *Jedediah Strong*, but the two other obligors were present, and consented to the alteration; and he contended that the bond was still good against them, although afterwards the erasure of the signature and seal of *Jedediah Strong* was made.

*Charles Marsh.* All that the plaintiff attempts to prove is, that the alteration was made with the consent of the two remaining obligors, but that, when they gave their consent, the seal and signature of *Jedediah Strong* still remained. It does not appear that they ever gave any consent to the erasure of the name and seal of their co-obligor, nor would they. This

cannot therefore amount to a new acceptance and delivery by *Solomon Strong* and *Jacob Bradbury*.

*Nathaniel Chipman.* The bond became void. When altered it became no bond, but depended upon the subsequent act of the two individuals to render it obligatory. So in case where bond is given jointly and severally by ten obligors : it is altered; five consent and five refuse to consent to the alteration, and make a new delivery. It would hold against those five who consented. Each is bound by his individual act. If they had picked up an old bond signed by three others, not parties to their contract, and then executed it, would any one contend that they might not, after the execution, have cut off the immaterial names ? They might have been *Indian* names, and as accidentally there as the wax. The plaintiff, or rather his assignor the sheriff, might have had incorrect ideas upon the subject. But whatever they might have thought, after the alteration the name of *Jedediah Strong* was mere surplusage. It might have looked like forgery to see it there, but it was no longer *Jedediah Strong's* bond. By the alteration it became as to him a mere nullity.

*Charles Marsh.* We wish to be informed if the object of the proffered evidence is merely to shew that *Solomon Strong* and *Jacob Bradbury* consented to the alteration of the bond so far as relates to the changing the names of the towns. If so, we will not contend.

*Nathaniel Chipman.* We expect to prove that the transaction between the assignor of the plaintiff and the defendant and *Solomon Strong,* after the alteration, amounted to an actual redelivery and acceptance of the bond.

Dewey
v.
Bradbury.

*Taylor,* a witness, sworn. I was present when the alteration was made. A defect as to the town of *Hartford* was discovered. *Hartford* was erased and *Hartland* put in its place, by one *Turner,* a constable. *Solomon Strong* and *Jacob Bradbury* were present, consented to the alteration, and said that the bond should be taken as good, and no advantage taken. *Jedediah Strong* was not present, nor was any mention made of his name.

*Adams,* a witness on the part of the defendant, testified, that he was present at the alteration. *Solomon Strong* and *Jacob Bradbury* said they accepted the bond as good. *Turner* said he would get *Jedediah Strong* to consent to the alteration.

*Charles Marsh.* We now renew our objection to the bond being read in evidence. An immaterial alteration by a stranger does not destroy a bond; but when ever so immaterial an alteration is made by the obligee, it does destroy it. Here the alteration was made by *Turner,* the officer, a mere stranger to the contract, and the alteration was immaterial so the bond did not become a new bond, as contended for. The whole drift of the testimony shews, that all the consent of *Solomon Strong* and *Jacob Bradbury* went merely to their taking no advantage of the alteration,

not to accept the bond as a new and separate thing. It is manifest they meant it merely as a consent to the alteration, but not to accept the bond as a binding instrument upon themselves separately from *Jedediah Strong*.

*Nathaniel Chipman.* The question, as now put to the Court, is a matter properly *in pais*, to wit, whether the evidence goes to prove a second delivery. It is not now a question whether the bond was nullified or not by the alteration. It is sufficient that the parties esteemed it so at that time; and the proper question to the Jury is, whether what was done by the two made the bond binding upon them.

*Charles Marsh.* The gentleman is endeavouring to steal a law point from the Court, and give it to the Jury. This is merely a point of law for the sole decision of the Court. It must be agreed that an immaterial alteration by a stranger cannot vitiate a bond, and all questions of erasures, &c. belong properly to the Court.

SMITH, Judge. This appears to be a transaction well understood by the parties, and I think they ought to be bound by it.

HALL, Judge. I am of a different opinion. The bond was altered; two consented; the third not present. The parties, it appears by the testimony of *Taylor*, never understood more than a consent to the alteration; and here appears a new bond by the era-

sure of *Jedediah Strong's* signature and seal. I am not for admitting this bond to be read in evidence.

WOODBRIDGE, Chief Judge. I agree with Judge HALL. The two obligors never consented to more than the mere alteration of the bond. It is manifest, from the testimony of *Adams*, a consultation with *Jedediah Strong* upon the subject was contemplated. The officer said he would endeavour to obtain *his* consent. The bond cannot be read in evidence. If people will destroy their own securities, the Court cannot help them.

On motion of plaintiff, the papers were taken from the Jury, and the cause continued to the next term, when plaintiff was nonsuited.

*Nathaniel Chipman*, for plaintiff.
*Charles Marsh*, for defendant.